UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:09 CR 679 HEA / DDN |
| ) | |
| KATHERINE A. MOCK and ) | |
| ELAIN KAY YOUNG, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**
<u>**REGARDING NON-SUPPRESSION MOTIONS**</u>

This action is before the court upon the pretrial motions of the parties which were referred to the undersigned Magistrate Judge under 28 U.S.C. § 636(b). A pretrial motion hearing was held on October 21 and 22, 2010. A transcript of the hearing has been filed. (Doc. 166, 167, 167-1.) Post-hearing memoranda, including a written stipulation of facts, have been filed.

Before the court are:

(1)  the motions of defendant Katherine A. Mock

  (a)  to suppress statements and physical evidence (Docs. 19 oral, 96, 97); and

  (b)  to sever co-defendants for separate trials (Doc. 95);

(2)  the motions of defendant Elain Kay Young

  (a)  to suppress statements and physical evidence (Docs. 29 oral, 98, 175);

  (b)  to sever co-defendants for separate trials (Doc. 90);

  (c)  to dismiss the indictment (Doc. 99);

  (d)  to strike surplusage from the indictment (Doc. 100); and

  (e)  for an order directing the government to choose its theory of prosecution (Doc. 101); and

(3)  the motions of the government for a determination by the court of the admissibility of any arguably suppressible evidence (Docs. 20 oral, 30 oral).

This Report and Recommendation deals only with the motions identified above as (1)(b) and (2)(b) through (e). The remaining motions, relating to the motions to suppress evidence ((1)(a), (2)(a), and (3)), will be treated in a separate Report and Recommendation.

## MOTION TO DISMISS

Defendant Elain Kay Young has moved to dismiss the indictment (Doc. 99). The current charges against defendants Young and Mock are in a superseding indictment which was filed on May 3, 2010, after the pending motion to dismiss was filed. (Doc. 108.) The court will apply defendant's arguments to the superseding indictment, because the subject matter of the arguments is also found in the superseding indictment.

Defendant Young argues that the indictment does not allege sufficient facts to charge a violation of 18 U.S.C. § 1958. The court disagrees.

To be legally sufficient on its face, the superseding indictment must contain all the essential elements of each offense charged; it must fairly inform each defendant of the charge against which she must defend; and it must allege sufficient information to allow a defendant to plead a conviction or an acquittal as a bar to a future prosecution. U.S. Const. amends. V and VI; Fed. R. Crim. P. 7(c)(1); Hamling v. United States, 418 U.S. 87, 117 (l974); United States v. White, 241 F.3d 1015, 1021 (8th Cir. 2001). See also United States v. Resendiz-Ponce, 549 U.S. 102, 108 (2007).

Both defendants are charged in Count 1 with conspiracy to commit murder-for-hire, in violation of 18 U.S.C. § 1958,[1]

---

[1] Section 1958 provides in pertinent part:

(a)   Whoever travels in or causes another (including the intended victim) to travel in interstate or foreign commerce, or uses or causes another (including the intended victim) to use the mail or any facility of interstate or foreign commerce, **with intent that a murder be committed** in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so, shall be [punished].

18 U.S.C. § 1958(a) (2004)(emphasis added).

> by using and causing another to use the United States mails and other facilities of interstate commerce **with the intent that the murder of Melvin B. Griesbauer be committed** in violation of the laws of the State of Missouri, as consideration for the receipt of, and as consideration for a promise and agreement to pay things of pecuniary value, namely money, along with other benefits. Said conspiracy offense resulted in the death of Melvin B. Griesbauer on March 23, 2006.

(Doc. 108, at 2)(emphasis added). The alleged time period of the conspiracy is from an unknown date in 2006 through the date of the indictment in 2009. (Id. at 1.) The alleged object of the conspiracy is the acquisition of substantial life insurance policy death benefits. (Id. at 2-3.) The alleged method and means of the conspiracy included the use of the mail or other use of "any facility of interstate commerce, as part of the processing of the insurance policies, including but not limited to, claims for proceeds payable upon the death of Melvin B. Griesbauer." (Id. at 8.) The superseding indictment alleges specifically that several steps and uses of facilities of interstate commerce occurred after Mr. Griesbauer's death. (Id. at 7.)

Count 2 of the superseding indictment alleges that, in violation of 18 U.S.C. §§ 1958 and 2, between and including 2006 through 2009 both defendants used "the mail and other facilities of interstate commerce **with the intent that the murder of Melvin B. Griesbauer be committed** in violation of the laws of the State of Missouri as consideration for the receipt of, and as consideration for, a promise and agreement to pay things of pecuniary value, that is, money and other items of pecuniary value. Said offense resulted in the death of Melvin B. Griesbauer." (Id. at 9) (emphasis added).

Defendant Young argues she is not charged with a federal crime because she is alleged to have used the mail on several occasions after the murder. She argues she could not have used the mail or interstate commerce "with the intent that a murder be committed," as proscribed by 18 U.S.C. § 1958(a) (2004), because the alleged use of the mail and facilities of interstate commerce occurred after the killing. For this argument, defendant invokes United States v. Delpit, 94 F.3d 1134 (8th Cir. 1996).

In Delpit, defendants were convicted of murder-for-hire in violation of 18 U.S.C. § 1958(a). The court of appeals held that the crime required proof that (1) the defendants engaged in interstate

-3-

travel or caused another to do so, (2) with the intent that a murder be committed, (3) for hire. Id. at 1149.  The court further explained § 1958(a),

> This statute is relatively straightforward, both in what it prohibits and in what it does not reach.  It does not prohibit murder or attempted murder.  Instead, it outlaws using interstate-commerce facilities with the intent that murder-for-hire be committed.  Once the interstate-commerce facility is used with the required intent the crime is complete.  One who travels or causes another to travel in interstate commerce with the necessary murderous intent need not do anything else to violate the statute.  It is clear, moreover, that a defendant can violate § 1958(a) without actually hurting or killing anyone, because the statute provides for *enhanced* punishment when death or injury results from the defendant's violation of the statute.

Id. at 1149-50.

In Delpit, as to defendant Chanise Lynn the court ruled that the intended crime had already been committed when the interstate travel occurred.  Therefore, Lynn's conviction was reversed. Id. at 1151.  Defendant Young argues that this ruling applies to both Counts 1 and 2, because by the time the insurance papers were mailed, the Griesbauer murder was complete and defendant could not have made the mailings with the intent to murder in the future.  The undersigned concludes that Young's argument is incorrect.

First, the Eighth Circuit's ruling in Delpit that defendant Chanise Lynn did not violate § 1958(a) does not help Young.  The gist of the violation of § 1958(a) in Delpit was Calvin Delpit's travel from Illinois to Minnesota for the purpose of killing rival gang members.  The Eighth Circuit said:

> The government presented no evidence suggesting that Lynn conspired to cause Delpit to travel, or that she conspired with Delpit to travel, with the intent that a murder-for-hire be committed.  In the end, she may have been party to an attempted murder in Minnesota, but that is not-nor, standing alone, could it ever be-a federal crime.

Id. at 1151.

Second, concerning its original enactment of that portion of the Comprehensive Crime Control Act of 1984, P.L. 98-473, Congress reported its understanding of the language that ultimately became 18 U.S.C. § 1958(a):

> The offenses set forth in this part are related but distinct. The first is limited to murder and punishes the travel in interstate or foreign commerce or the use of the facilities of interstate or foreign commerce or of the mails, as consideration for the receipt of anything of pecuniary value, *with the intent that a murder be committed*.
>
> With respect to the first offense, the Committee is aware of concerns of local prosecutors with respect to the creation of concurrent federal jurisdiction in an area, namely murder cases, which has heretofore been the almost exclusive responsibility of state and local authorities. However, the Committee believes that the option of federal investigation and prosecution should be available when a murder is committed or planned as consideration for something of pecuniary value and the proper federal nexus, such as interstate travel, use of the facilities of interstate commerce, or use of the mails is present.
>
> * * *
>
> . . . Section 1952A reaches travel in interstate or foreign commerce or the use of the mails or of a facility in interstate or foreign commerce *with the intent that a murder be committed in violation of state or federal law. The murder must be carried out or planned as consideration for the receipt of "anything of pecuniary value."*
>
> * * *
>
> The gist of the offense is the travel in interstate commerce or the use of the facilities of interstate commerce or of the mails with the requisite intent and the offense is complete whether or not the murder is carried out or even attempted.

H.R. 98-1030, H. Conf. Rep. 98-1159, 1984 U.S. Code Cong. and Admin. News p. 3182, 3484-86. Nowhere in the legislative report is there any expression that the murder, planned or accomplished, must follow in time the use of interstate commerce facilities or of the mail and the proscribed intent. Id. The murderous intent must accompany the act of using the facility of interstate commerce or the act of using the mail.

Third, case law supports this interpretation of § 1958(a). E.g. United States v. Basile, 109 F.3d 1304, 1312-13 (8th Cir. 1997); United States v. Johnson, 635 F. Supp. 2d 759, 762-63 (W.D. Tenn. 2009). Basile involved both pre- and post-murder uses of the mail, to apply for a life insurance policy and then to submit a claim for the death benefits. The Eighth Circuit clearly indicated, although not in so many words, that the post-murder use of the mail was sufficient to sustain the conviction. When affirming the denial of Basile's motion for acquittal on the murder-for-hire charges, the Court stated:

> The government has the benefit of the logical inference that the purchase of the policy on Elizabeth Dakar's life was an integral part of [her husband's] scheme to have her murdered.  Further, the evidence permits the inference that [her husband], otherwise lacking the ability to pay Basile for his services, intended to pay him when [he (the husband)] collected the $100,000 on the life insurance policy.
>
> We hold that the district court did not err in denying Dakar's motion for judgment of acquittal, as a jury could find beyond a reasonable doubt the necessary connection between his use of the mail or facilities of interstate commerce and the murder-for-hire scheme.

Basile, 109 F.3d at 1313.

In Johnson, the district court explained:

> [T]he Court finds that § 1958 does not require that the elements of the offense occur in a specific sequence . . . .  [T]he fact that the murder of Martha Johnson occurred prior to the interstate activity . . . is irrelevant to prove the crime of murder-for-hire.  Moreover, just as § 1958 does not require that the contract already be in existence or that consideration be furnished at the time of the interstate activity, there is nothing in the plain wording of the statute to suggest that the interstate activity must be accomplished prior to the murder or proposed murder.

635 F. Supp.2d at 763 n. 11.

For these reasons, the motion to dismiss the indictment should be denied.

## **MOTION TO STRIKE SURPLUSAGE**

Defendant Young has moved to strike paragraphs 10(v), (x), and (y) as surplusage from Count 1 of the superseding indictment (Doc. 100).  Fed. R. Crim. P. 7(d).[2]  The parties agree that surplusage should be stricken from an indictment where clearly the subject matter of the motion is not relevant to the charge or contains inflammatory or prejudicial material.  See  United States v. Michel-Galaviz, 415 F.3d 946, 948 (8th Cir. 2005).

Paragraph 10(v) alleges:

(v) It was further part of the conspiracy [to commit murder for hire in violation of 18 U.S.C. § 1958] that on or about 2009, Elain Kay Young, further attempted to conceal the conspiracy by mailing or causing a letter to be mailed that directed potential witnesses to "try to avoid insurance discussions."

---

[2]Federal Rule of Criminal Procedure 7(d) provides, "Upon the defendant's motion, the court may strike surplusage from the indictment or information."

Paragraph 10(x) alleges:

> (x)[3]   It was further a part of the conspiracy that beginning at a time unknown and continuing through in or about April 2009, Elain Kay Young, further attempted to conceal the conspiracy by mailing or causing a letter to be mailed that directed potential witnesses not to disclose her ability to escape from custody.

Paragraph 10(y) alleges:

> (y)   It was further a part of the conspiracy that Elain Kay Young, beginning at a time unknown and continuing through in or about April 2009, further attempted to conceal the conspiracy by mailing or causing to be mailed letters that directed potential witnesses as to the manner and means by which to communicate regarding her ability to escape and travel to a non-extradition country.

(Doc. 108 at ¶¶ 10(v), (x), (y)).

Defendant Young argues that these allegations do not comply with the requirement of Federal Rule of Criminal Procedure 7(c) that the indictment be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Young argues that these allegations relate not to the offense charged in Count 1 but to a "fantastical escape scenario," that may be relevant to a sentencing proceeding. (Doc. 100 at 3.)

In response, the government argues that, even though these alleged facts may not be essential elements of the Count 1 charge, her efforts to conceal the conspiracy, to attempt to abscond, and to direct potential witnesses how to discuss her ability to escape are relevant to prove Young's guilt and her consciousness of guilt. (Doc. 119 at 4.)

The undersigned concludes from the record that these allegations should be stricken as surplusage. As the government as much as admits, these allegations are not essential elements of the Count 1 conspiracy charge. While evidence of such facts may be reasonably offered into evidence for the stated purpose at trial, it is premature to determine that such evidence will be admitted by the trial judge. Certainly, if the indictment is read to the jury with these allegations and at trial evidence of those facts is offered but not received, or if the government determines not to offer that evidence, even if such evidence is received into evidence by the court, given the sensitive

---

[3]There is no paragraph 10(w) in the superseding indictment.

-7-

subject matter of paragraphs 10(v), (x), and (y), it may be of little cautionary or remedial effect to instruct the jury that the indictment is not evidence, as the government proposes. The petit jury may remain impressed that the grand jury found probable cause to believe those facts are true. The potential for undue prejudice is great and the government has not described any paramount purpose to be accomplished by including them in the indictment.

The motion to strike should be sustained.

### MOTION TO REQUIRE THE GOVERNMENT TO CHOOSE A THEORY OF PROSECUTION

Defendant Young has moved for an order that the government choose its theory of prosecution (Doc. 101), that is, either that Young shot and killed Griesbauer or Mock did. Young argues that she is entitled to such pretrial information under the Due Process Clause to prevent the government from pursuing such inconsistent theories disjunctively. The government argues that the defendants are not entitled to such pretrial notification of the nature of the government's evidence.

The court agrees with the government. The legal focus of Count 1 is not the actual killing of Mr. Griesbauer, but the related conspiratorial agreement and the use of the mail and other facilities of interstate commerce with murderous intent. The legal focus of the Count 2 alleged crime, again, is not the actual killing, but the use of the mail and other facilities of interstate commerce with the alleged murderous intent. On these charges, the government need not prove who the shooter was. See United States v. Ortiz, 315 F.3d 873, 898 (8th Cir. 2002). As the government argues, these motions seek evidentiary detail that is unnecessary to avoid undue prejudice or surprise at trial.

### MOTIONS TO SEVER

Defendants Young (Doc. 90) and Mock (Doc. 95) each have moved for separate trials. Defendant Young argues, first, that the government has as evidence the post-arrest statement of co-defendant Mock that substantially incriminated both of them. Young argues, second, that she and Mock have mutually antagonistic defenses that may give the government an opportunity to obtain

convictions on a lesser standard than beyond a reasonable doubt, because the defendants by their antagonistic defenses may be argued by the government to have convicted themselves.

Defendant Mock argues in support of severance that the government may offer evidence involving co-defendant Young under Fed. R. Evid. 403(b) that is unrelated to Mock.

In determining whether any defendant is entitled to a separate trial, the court must decide whether joinder (1) was proper under Federal Rule of Criminal Procedure 8, and (2) is likely to have a "substantial and injurious effect or influence in determining the jury's verdict." United States v. Lane, 474 U.S. 438, 449 (1986) (internal quotations omitted).

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8(b). "Rule 8(b) requires that there be some common activity involving all of the defendants which embraces all the charged offenses even though every defendant need not have participated in or be charged with each offense." United States v. Bledsoe, 674 F.2d 647, 656 (8th Cir. 1982). The propriety of the joinder generally must appear on the face of the indictment. United States v. Wadena, 152 F.3d 831, 848 (8th Cir. 1998); United States v. Andrade, 788 F.2d 521, 529 (8th Cir. 1986). In this case, both defendants are charged together in each count and the counts relate to the same subject matter. Therefore, joinder was proper under Rule 8.

Defendants' arguments invoke Fed. R. Crim. P. 14(a) and seek severance to avoid being prejudiced by a joint trial. Defendants have not made a sufficient showing of pretrial prejudice at this time to call for separate trials. "Once defendants are properly joined under Rule 8, there is a strong presumption for their joint trial, 'as it gives the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome.'" United States v. Flores, 362 F.3d 1030, 1039 (8th Cir. 2004). Despite the judicial preference for joint trials, if the joinder appears to prejudice a defendant, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires. See Fed. R. Crim. P. 14(a); Zafiro v. United States, 506

U.S. 534, 539 (1993); United States v. Boyd, 180 F.3d 967, 982 (8th Cir. 1999). "To grant a motion for severance, the necessary prejudice must be 'severe or compelling.' " United States v. Pherigo, 327 F.3d 690, 693 (8th Cir. 2003).

Young argues that the statements offered against co-defendant Mock will incriminate Young without giving her a chance to cross-examine Mock, if Mock does not testify, in violation of Young's constitutional right to confront the evidence against her. See Bruton v. United States, 391 U.S. 123, 128 (1968). Bruton and its progeny, however, provide the court with procedural devices to avoid prejudice to Young, such as redacting the references to her in co-defendant Mock's statements and giving the jury cautionary instructions about the applicability of the subject evidence. See Bruton, 391 U.S. 133-34; Richardson v. Marsh, 481 U.S. 200, 211 (1987); Gray v. Maryland, 523 U.S. 185, 190-91 (1998); United States v. Logan, 210 F.3d 820, 821 (8th Cir. 2000). The circumstances of the actual trial will indicate whether these or other procedures will or won't adequately protect Young from the potential prejudice she has describes. If the trial circumstances are sufficient to call for severance, defendant Young may refile her motion for severance during trial and the court can consider and grant that relief upon a fuller record.

Defendant Young's second argument, that she and Mock have mutually antagonistic defenses, is without merit. "Antagonistic defenses require severance only when there is a danger that the jury will unjustifiably infer that *this conflict alone demonstrates that both are guilty*." United States v. Sandstrom, 594 F.3d 634, 644 (8th Cir. 2010). Further, "[m]utually antagonistic defenses are not prejudicial *per se*," and Rule 14 "does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Id. See also United States v. Payton, --- F.3d ---, 2011 WL 668060 at *5-6 (8th Cir. February 25, 2011). Other than to argue that co-defendant Young is criminally responsible, and that she (Mock) is not, defendant Mock has not specifically stated how her and Young's defenses are mutually antagonistic sufficiently to cause the jury to unjustifiably infer that both are guilty.

-10-

Defendant Mock also argues that the jury will not be able to compartmentalize the evidence and apply to her only the evidence that applies to her; rather she argues that the jury will also apply to her the evidence received only against Young. The state of the pretrial record is such that the undersigned cannot now say that a jury in a joint trial could not compartmentalize the evidence against each of the defendants, as defendant Mock argues. Rather, the trial judge will have a further record at trial to consider the complexity of the case, the nature of the evidence admitted against the defendants, and the adequacy of jury instructions to protect the defendants from the application of evidence admitted solely against the other defendant. See United States v. Ghant, 339 F.3d 660, 665-66 (8th Cir. 2003). During trial, defendant Mock will be able to move for reconsideration of severance when there is a fuller record for the court to consider.

For these reasons, the motions to sever should be denied without prejudice to either defendant seeking severance during trial.

## RECOMMENDATION

For the reasons set forth above,

**IT IS HEREBY RECOMMENDED** that

(a)  the motion of defendant Elain Kay Young to dismiss the indictment (Doc. 108) be denied.

(b)  the motion of defendant Elain Kay Young to strike paragraphs 10(v), 10(x), and 10(y) from the superseding indictment as surplusage (Doc. 100) be sustained.

(c)  the motion of defendant Elain Kay Young to require the government to choose a theory of prosecution (Doc. 101) be denied.

(d)  the motion of defendant Elain Kay Young to sever the defendants for separate trials (Doc. 90) be denied.

(e)  the motion of defendant Katherine Mock to sever the defendants for separate trials (Doc. 95) be denied.

The parties are advised that they have until close of business on March 28, 2011 to file written objections to this Report and Recommendation. The failure to file timely written objections will waive the right to appeal issues of fact.


        /S/   David D. Noce     
**UNITED STATES MAGISTRATE JUDGE**

Signed on March 14, 2011.