UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| ELAIN YOUNG, | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 4:16CV00045 HEA |
| | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

**EMERGENCY MOTION FOR COMPASSIONATE RELEASE**

Elain Kay Young, 65 years of age and a sufferer of numerous and significant medical conditions, including multiple immunocompromising conditions, an inmate at FCI Waseca, a low security federal correctional institution, respectfully moves the Court under 18 U.S.C. § 3582(c)(1)(A)(i) to modify her sentence to release her immediately to home confinement and a period of supervised release.  In addition, or in the alternative, Young requests that the Court recommend that the Bureau of Prisons grant her an immediate transfer to home confinement, pursuant to Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act (2020) (the CARES Act) (permitting the Director of the BOP, at the direction of the Attorney General, to lengthen the maximum amount of time that a prisoner may be placed in home confinement).[1]

COVID-19 presents an unprecedented public health risk, with a particularly high risk to the health of individuals in confined spaces.  Accordingly, the global

1

public health response has been to promote isolation, quarantine, and "social

distancing."  None of these measures, however, can be adequately implemented in

a prison environment.  Indeed, the unprecedented threat of COVID-19, which

could not have been foreseen at Ms. Young's sentencing, poses extraordinary risks

to the health of prisoners generally, and Ms. Young in particular.  The virus

thrives in densely packed populations, and the measures necessary to contain and

prevent infection are extremely difficult, if not impossible, to achieve in a prison

environment.

  As set forth in the accompanying declaration by Dr. Brie Williams,

Professor of Medicine at the University of California, San Francisco ("UCSF"),

submitted in connection with compassionate release applications across the

country (Exhibit A), Ms. Young, as an inmate with a compromised immune

system, is particularly vulnerable to COVID-19.

  As Dr. Williams explains:

>  Because inmates live in close quarters, there is an
> extraordinarily high risk of accelerated transmission of
> COVID-19 within jails and prisons.  Inmates share small
> cells, eat together and use the same bathrooms and sinks.
> They eat together at small tables that are cleaned only
> irregularly.  Some are not given tissues or sufficient hygiene
> supplies.  Effective social distancing in most facilities is
> virtually impossible, and crowding problems are often
> compounded by inadequate sanitation, such as a lack of hand
> sanitizer or sufficient opportunities to wash hands.
>
>  An estimated 39-43% of all prisoners, and over 70% of

---

[1] In a memo, dated April 3, 2020, Attorney General Barr urged the Bureau of Prisons to select and move appropriate candidates for home transfer expeditiously.  The memo is available here: https://www.ed.org/sites/default/files/covid19/barr_memo_caresact_apr3_2020.pdf.

older prisoners, have a least one chronic condition, some of the most common of which are diabetes, hypertension, and heart problems.  According to the CDC, each of these conditions – as well as chronic bronchitis, emphysema, heart failure, blood disorders, chronic kidney disease, chronic liver disease, any condition or treatment that weakens the immune response, current or recent pregnancy in the last two weeks, inherited metabolic disorders and mitochondrial disorders, heart disease, lung disease, and certain neurological and neurologic and neurodevelopment conditions – puts them at a "high-risk for severe illness from COVID-19."

Additionally, Attorney General Barr, in his April 3, 2020, memo stated, "[w]hile BOP has taken extensive precautions to prevent COVID-19 from entering its facilities and infecting out inmates, those precautions, like any precautions, have not been perfectly successful at all institutions[2]."

As Attorney General Barr acknowledges and Dr. Williams' Declaration attests, the threat presented to Ms. Young's health by the pandemic is immense.

Ms. Young, with her extensive list of health conditions, is uniquely vulnerable to the COVID-19 threat.

The situation is especially dire for Ms. Young, who at 65 years of age is suffering from a plethora of medical conditions which not only make her more susceptible to the contagion, but also more likely to have severe complications or even death.  Ms. Young's suffers from the following medical conditions:  fourth stage renal disease, a right kidney which has completely ceased to function, a left kidney which is damaged and in need of a transplant, high blood pressure (with a prior stroke), PTSD, diabetes (which at one time resulted in insulin dependency),

---

[2] *See* https://www.fd.org/sites/default/files/covid19/bar_memo_caresact_apr3_2020.pdf.

disability related to a 17 disc neck/back injury which required steroid injections,

neuropathy, a fractured foot and torn ligaments (for which she cannot receive

treatment as a result of lockdown conditions), two broken teeth (for which she

cannot receive dental care as a result of lockdown conditions and which can result

in heart issues), glaucoma and a need for new glasses (for which she cannot

receive optometry care as a result of lockdown conditions), a history of heavy

smoking (3 pack per day), and hypothyroidism[3].  According to the latest CDC

guidelines, immune-compromised individuals such as those who, like Ms. Young,

are 65 years of age and older, smokers, prolonged users of corticosteroids,

diabetics and those who have chronic kidney disease are at higher risk for severe

illness from COVID-19[4].  In effect, the COVID-19 pandemic could become a *de
facto* death sentence for Ms. Young.

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes

courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment
> once it has been imposed except that – in any case- the
> court, upon motion of the Director of Bureau of
> Prisons, or upon motion of the defendant after the
> defendant has fully exhausted all administrative rights
> to appeal a failure of the Bureau of Prisons to bring a
> motion on the defendant's behalf or the lapse of 30
> days from the receipt of such a request by the warden
> of the defendant's facility, whichever is earlier, may
> reduce the term of imprisonment (and may impose a
> term of probation or supervised release with or without
> conditions that does not exceed the unserved portion of

---

[3] This list of medical conditions is not exhaustive.

[4] *See* CDC, *People Who Are at Higher Risk for Severe Illness*, available at
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

the original term of imprisonment), after considering
the factors set forth in section 3553(a) to the extent
that they are applicable, if it finds that –

(i)     Extraordinary and compelling reasons warrant
        such a reduction . . . and that such a reduction is
        consistent with applicable policy statements
        issued by the Sentencing Commission.

Allowing Ms. Young to finish out her sentence at home is the only prudent

response to the extraordinary and compelling circumstances created by the

coronavirus pandemic, especially given the severe threat to her health.  As Dr.

Brie Williams notes in the attached declaration (submitted in connection with

similar motions across the country), "[j]ails and prisons are fundamentally ill-

equipped to handle a pandemic.  Medical treatment capacity is not the same level

in a correctional setting as it is in a hospital.  Some correctional facilities have no

formal medical ward and no place to quarantine sick inmates, other than the

facilities' Special Housing Unit (SHU) . . . correctional health is public health.

Decreasing risk in prisons and jails decreases risk to our communities." *See*

Exhibit A.

Ms. Young is an excellent candidate for early release.  In addition to her

zero disciplinary violations while incarcerated, Ms. Young possesses a minimum

recidivism risk level.  Additionally, she has put her R.N. and School

Superintendent skills to work, by being involved with the following programs

during her time in Bureau of Prisons:

- While at Hazelton, Ms. Young:

- o Wrote curriculum (upper level training classes and anatomy) for health classes.
  - o Taught yoga and all health classes.
  - o Designed the breast awareness walk and talks.

- While at Aliceville, Ms. Young:

  - o Wrote curriculums for health teaching and yoga.
  - o Clerked for vocational training (this included setting up the entire NCCER program, all files, teaching carpentry and electrical for a national program, setting up test design to fit the national exams.
  - o Served and trained for the Rubies for Life (completing the 18 months class and mentoring with perfect attendance).
  - o Participated and served in all religious programs.
  - o Performed in 2 Christmas programs.

- While at Carswell, Ms. Young:

  - o Rewrote over 100 curriculums.
  - o Taught classes in Education.
  - o Served as the clerk for the Captains area (over all supplies) and received the Service Award for service.
  - o Produced a Christmas production for the compound and did a hospital singing for the bed ridden.

- While at Waseca, Ms. Young:

  - o Rewrote over 20 curriculums.
  - o Taught wellness, a seated exercise class and piano.

- In all facilities, Ms. Young:

  - o Has been called to mentor and help in the Educational Resources areas for interviews, job searches and resume writing.

Ms. Young's lack of disciplinary actions, previous participation and assistance to others during incarceration, along with her current age, medical concerns, and post release plan (discussed below), all demonstrate Ms. Young would not be a danger

6

to the community in the event she is released.  We therefore urge the Court to grant Ms. Young's request for release and/or recommend to the BOP, consistent with the authority granted it by Congress, to transfer Ms. Young to home confinement immediately.

While Attorney General Barr mandated a 14-day quarantine period before any transfer to home confinement in a memo dated March 26, 2020, we note that he modified this requirement in a memo dated April 3, 2020, in cases of inmates with an appropriate release residence where such quarantine can be effectuated. Ms. Young can complete her quarantine at an appropriate release residence.  Ms. Young intends to reside with Marilyn Lanman at 18561 Erbe Street, Carlisle, IA 50047.  She has chosen this residence as it places her in proximity to the Mayo Clinic where she has previously sought medical treatment and where she would seek medical treatment post release.  Her release plan is as follows:

- Marilyn Lanman is willing and able to drive to FCI Waseca and pick Ms. Young up in her car.

- Ms. Lanman can provide Ms. Young with a surgical mask (and will wear the same herself), as well as other personal protective equipment (PPE) to cover her completely during their journey back to her home.

- Ms. Lanman's living quarters would allow for Ms. Young to complete a quarantine period, and can be used to fulfill a decontamination protocol upon Ms.

Young's arrival.

**Under the First Step Act, this Court has Broad Authority to Determine Whether Extraordinary and Compelling Circumstances Exist to Modify Ms. Young Sentence and Release Her to Home Confinement**

The First Step Act ("FSA") expressly permits Ms. Young to move this Court to reduce her term of imprisonment and seek compassionate release. *See* 18 U.S.C. § 3583(c)(1)(A)(i).  A defendant can seek recourse through the courts after either (1) the BOP declines to file such a motion on her behalf; or (2) there has been a lapse of 30 days from the warden's receipt of the defendant's request, whichever is earlier.  *Id.*  On April 6, 2020, Ms. Young transmitted her request to BOP and receipt of that request was acknowledged. Thirty days have passed with no response from BOP and accordingly, this Court has authority to consider Ms. Young's motion.

Thirty days after a defendant has submitted her request to the Bureau of Prisons, "a court may then 'reduce the term of imprisonment' after finding that 'extraordinary and compelling reasons warrant such a reduction' and 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'"  *United States v. Ebbers*, 2020 WL 91399, at *4, 02-CR-1144 (VEC) (ECF No. 384) (S.D.N.Y. Jan. 8, 2020).  "In making its decision, a court must also consider "the [sentencing] factors set forth in section 3553(a) to the extent that they are applicable."  *Id.*  (quoting 18 U.S.C. § 3582(c)(1)(A)).

While courts have noted that the Sentencing Commission's applicable policy statement on what constitutes "extraordinary and compelling reasons" to warrant a sentence reduction is anachronistic because it has not been updated since passage of the FSA, they still continue to be guided by the Sentencing Commission's descriptions of "extraordinary and compelling reason." *See, e.g., Ebbers*, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020). However, the Sentencing Commission's statements do not constrain the court's independent assessment of whether "extraordinary and compelling" reasons warrant a sentence reduction in light of the First Step Act's amendments. *United States v. Beck*, 2019 WL 2716505, at *5–6 (M.D.N.C. June 28, 2019); *see also Ebbers*, 2020 WL 91399, at *4. Indeed, "the district courts themselves have the power to determine what constitute extraordinary and compelling reasons for compassionate release." *United States v. Young*, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) (collecting cases).

As more fully set forth below, extraordinary and compelling reasons exist in this case warranting a reduction in Ms. Young's sentence.

A.  **"Extraordinary and compelling reasons" warrant a reduction in Ms. Young's sentence.**

1. *COVID-19 is a public health disaster that threatens vulnerable incarcerated persons like Ms. Young.*

The COVID-19 pandemic continues to roil the United States.  As of May 2, 2020, there have been more than one million, two hundred forty-five thousand COVID-19 reported cases in the United States, and the death count exceeds 75,000.[5]  COVID-19 is already sweeping through the country's  jails and prisons, too, and BOP facilities.  None have yet been reported at Waseca FCI, where Ms. Young is incarcerated, but this is surely simply a matter of time.  As of May 6, 2020, there are 2100 federal inmates and 365 BOP staff who have confirmed positive test results for COVID-19 nationwide, and there have been 42 inmate deaths.[6]  These figures do not include individuals who have tested positive or died in pretrial or presentence detention at local facilities.  While the infection rate based on available BOP data is disturbing, "because testing has been grossly insufficient, these numbers are almost certainly an undercount."[7]  Moreover, as is illustrated in the graph below,[8] there is no sign that the infection curve in the BOP is flattening.

---

[5] *See* https://coronavirus.jhu.edu/#covid-19-basics.

[6] *See* https://www.bop.gov/coronavirus/.

[7] Lisa Freeland, *et al.*, *We'll See Many More Covid-19 Deaths in Prisons if Barr and Congress Don't Act Now*, Wash. Post (Apr. 6, 2020), https://www.washingtonpost.com/opinions/2020/04/06/covid-19s-threat-prisons-argues-releasing-at-risk-offenders/.

[8] Prepared by the Federal Defenders of New York.



Conditions of confinement create an ideal environment for the transmission of highly contagious diseases like COVID-19.[9]  BOP employees are complaining that they lack masks and gloves, hand sanitizer, and even soap.[10]     This Court is already aware of the extensive reports of the efforts taken to stem the spread of COVID-19 in jail and prison settings and the inevitable inadequacy of such measures, and we will not belabor those here.[11]

Decarceration in this context is not only a public health imperative.  It is also a humanitarian imperative.

---

[9] *See* Joseph A. Bick, *Infection Control in Jails and Prisons*, Clinical Infectious Diseases 45(8):1047-1055 (2007), at https://academic.oup.com/cid/article/45/8/1047/344842 (noting that in jails "[t]he probability of transmission of potentially pathogenic organisms is increased by crowding, delays in medical evaluation and treatment, rationed access to soap, water, and clean laundry, [and] insufficient infection-control expertise").

[10] *Federal Prison Workers Say Conflicting Orders on Coronavirus Response is Putting Lives at Risk, CBS News* (March 19, 2020), *available at* https://www.cbsnews.com/news/coronavirus-prison-federal-employees-say-conflicting-orders-putting-lives-at-risk-2020-03-19/;  Danielle Ivory, *'We Are Not a Hospital': A Prison Braces for the Coronavirus*, N.Y. Times (Mar. 17, 2020), *available at* https://www.nytimes.com/2020/03/17/us/coronavirusprisons-jails.html; Martin Kaste, *Prisons and Jails Worry About Becoming Coronavirus 'Incubators.'"* NPR (March 13, 2020), https://www.npr.org/2020/03/13/815002735/prisons-and-jails-worry-about-becoming-coronavirus-incubators.

[11] *See, e.g.*, Ned Parker at al, *Spread of Coronavirus Accelerates in U.S. Jails and Prisons*, Reuters, March 29, 2020, available at https://www.reuters.com/article/us-health-coronavirus-usa-inmates-insigh/spread-of-coronavirus-accelerates-in-us-jails-and-prisons-idUSKBN21F0TM.

*2. Ms. Young's vulnerability to COVID-19 due to her high medical risk is*

*an extraordinary and compelling reason that warrants a sentence*

*reduction.*

As previously noted, Ms. Young is particularly vulnerable to COVID-19.
Her medical history puts her at an increased risk.  This is an "extraordinary and
compelling reason" for her release.  *See* Note 1(A), § 1B1.13 (expressly
recognizing that "other reasons" may exist for granting compassionate release),
*see* Note 1(D), § 1B1.13 Note 1(D) (recognizing that extraordinary and
compelling reasons exists "other than, or in combination with, the reasons
described in subdivisions (A) through (C).").  Here, Ms. Young's high
susceptibility to COVID-19 falls within the purview of this catchall.  Moreover,
courts have noted that while § 1B1.13 provides "helpful guidance" for determining
what constitutes an extraordinary and compelling reason to warrant a sentence
reduction, the inquiry does not end there.  Rather, district courts have the freedom
to shape the contours of what constitutes an extraordinary and compelling reason
to warrant compassionate release.[12]  Given the highly infectious nature of COVID-

---

[12] *See United States v. Beck*, No. 1:13-CR-186- 6, 2019 WL 2716505, at *5-6 (M.D.N.C. June 28, 2019)
("The Sentencing Commission has not amended or updated the old policy statement since the First Step
Act was enacted, nor has it adopted a new policy statement applicable to motions filed by defendants.
While the old policy statement provides helpful guidance, it does not constrain the Court's independent
assessment of whether "extraordinary and compelling reasons" warrant a sentence reduction under §
3582(c)(1)(A)(i)." (internal citation omitted)); *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL
2498923, at *4 (S.D. Tex. June 17, 2019) ("Given the changes to the statute, the policy-statement provision
that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not
comply with the congressional mandate that provide guidance on the appropriate use of sentence-
modification provisions under § 3582."); *United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086,
at *3 (D. Me. July 11, 2019) ("I agree with the courts that have said that the Commission's existing policy

19, the limitations in a prison environment on practicing the hygienic and social distancing techniques that the Center for Disease Control has put in place to prevent rapid transmission, and the fact that Ms. Young suffers from ailments that have already been identified as "high risk," this Court should find that Ms. Young's legitimate medical risk is a sufficiently extraordinary and compelling basis for granting compassionate release.

Many courts have granted compassionate release in circumstances such as this. In particular, courts have granted compassionate release where the prisoner's compromised immune system renders them particularly vulnerable to COVID-19 infection and fatality.[13] As one court explained:

> Mr. Sanchez's compromised immune system means
> that he is less capable of warding off infection, and if
> he contracts COVID-19, is more likely to experience a
> severe and rapidly escalating case, which would impair
> the ability of the staff at MDC Brooklyn to identify
> and respond to Mr. Sanchez's medical needs.

---

statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive given the statutory change.").

[13] *United States v. Sanchez*, 2020 WL 1933815, *5 (D. Conn. April 22, 2020) (granting compassionate release where prisoner suffered from lupus, resulting in a compromised immune system); *United States v. Campagna*, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *1 (S.D.N.Y. Mar. 27, 2020) (granting motion for compassionate release where defendant suffers from a compromised immune system); *United States v. Jepsen*, No. 3:19-CV-00073(VLB), 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020) (same).

*United States v. Sanchez*, 2020 WL 1933815, *5 (D. Conn. April 22, 2020).  In

addition, courts have granted compassionate release in cases where prisoners

suffered from liver and kidney related medical issues.[14]

### B.  The Sentencing Factors Set Forth in 18 U.S.C. 3553(a) Support Granting Ms. Young's Motion

#### 1.  Ms. Young's Prison Record

Ms. Young's prison record is remarkable.  Ms. Young committed early on

to using her incarceration as an opportunity to engage in self-reflection and

improvement and using her particular skill set for the benefit of other incarcerated

individuals.  It is clear that she has adjusted extraordinarily well and has become

an asset to the Waseca facility as well as the other facilities in which she was

housed.  Further, Ms. Young has zero disciplinary actions and she is a motivated

worker, mentor and teacher.  In addition, she has taken full advantage of the

various programming options available, and completed a number of those

programs.

---

[14] *See United States v. Hammond*, 1:02-cr-00294-BAH-1, 2020 WL 1891980, at *8 (D. D.C. Apr. 16, 2020) (granting compassionate release to a defendant with the "serious medical condition," Hepatitis C); *United States v. Miller*, 2:16-cr-20222-AJT-RSW-1, 2020 WL 1814084 (E.D. Mich. Apr. 9, 2020) (granting compassionate release to a defendant with Hepatitis C, among other medical conditions); *United States v. McGraw*, 2:02-cr-00018-LJM-CMM, 2019 WL 2059488, at *1–2 (S.D. Ind. May 9, 2019) (granting compassionate release to 72 year-old inmate with limited mobility, diabetes, kidney disease, Hepatitis C, and other issues); *United States v. Gray*, 416 F. Supp. 3d 784, 786 (S.D. Ind. Sept. 20, 2019) (granting compassionate release to a defendant with "chronic debilitating medical conditions" including type II diabetes, hypertension, hyperlipidemia, chronic constipation, and Hepatitis C).

Ms. Young's prison record has been exemplary.  She was labeled as

eligible for release under First Step Act by BOP on March 26, 2020, and labeled at

a recidivism risk level of minimum.

### 2.  *Ms. Young's Release Plan*

Ms. Young has an excellent and verifiable release plan that allows for her

to self-quarantine, live in an appropriate home and in a location close to the Mayo

Clinic where she can receive the extensive medical care that she requires.

### 3.  *Conclusion*

For the foregoing reasons, Ms. Young respectfully requests that the Court

modify her sentence under 18 U.S.C. § 3582(c)(1)(A)(i) and release her

immediately to a period supervised release with home confinement.  Alternatively,

Ms. Young requests that the Court recommend to the BOP to transfer Ms. Young

immediately to home confinement, pursuant to its authority under 18 U.S.C. §

3624(c)(2), as expanded by Section 12003(b)(2) of the CARES Act.  *See*, *e.g.*

*United States v. Underwood*, Case No. 8:18-cr-201-TDC, Dkt. No. 179 (Mar. 31,

2020) (encouraging release of elderly defendant in BOP custody because, even

though no positive of COVID-19 in facility, "there is a significant potential for it

to enter the prison in the near future").

Alternatively, Ms. Young is not in a physical condition to be feasibly

transported to Missouri for hearing, therefore, she requests a telephonic hearing as

soon as possible.

Dated: May 8, 2020.

Respectfully Submitted:


*/s/ Chastidy Dillon-Amelung*

_____
Chastidy Dillon-Amelung
8008 Carondelet Ave., Suite 311
P.O. Box 50227
Clayton, MO. 63105
Chastidy@Dillon-Amelung.com
Attorney for Petitioner


CERTIFICATE OF SERVICE

Signature above is also certification that a true and correct copy of the above and foregoing document has been filed this 8th day of May, 2020, with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the Office of the United States Attorney.